# Whittaker v. Valley Camp Coal Company, Appellant.

*Negligence—Master and servant—Mines and mining—Safe place to work—Mine foreman—Entry way—Support pillars—Distance from tracks—Brakeman squeezed between train and pillar—Promise to remove pillars—Contributory negligence.*

1. In an action against a mining company to recover for personal injuries sustained by a brakeman in defendant's employ, the case is for the jury and a verdict for the plaintiff will be sustained where it appeared that plaintiff dismounted from a locomotive in a mine and went back along the train to apply the brakes to the cars and was squeezed between the train and one of a series of posts, which had been placed between the main track and the switch to support the roof of the mine; that there was a space of only two and one-half feet between the post and the main track; and that plaintiff had notified defendant's superintendent and the mine foreman that the posts were dangerous and had continued to work in reliance upon their promise to remove them.

2. In such case, there was no merit in the contention that the responsibility was that of the mine foreman and not that of the defendant, although the posts had been erected at the order of the foreman.

210 WHITTAKER v. VALLEY CAMP COAL CO., Appel.

Argued Oct. 8, 1917. Appeal, No. 20, Oct. T., 1917, by defendant, from judgment of C. P. Allegheny Co., July T., 1915, No. 392, on verdict for plaintiff, in case of Alfred Whittaker v. Valley Camp Coal Company, a Corporation. Before MESTREZAT, STEWART, MOSCHZISKER, FRAZER and WALLING, JJ. Affirmed.

Trespass to recover damages for personal injuries.
SHAFER, P. J., filed the following opinion:
The plaintiff was a brakeman in the employ of the defendant, and his duty was to ride upon the locomotive with the driver; only when necessary to get off and apply brakes or when standing on the ground beside the train. His testimony was that a train of ten or more cars had been left standing on the main track and that he and the driver took the motor in the, morning when they were going to work, attached it to the cars and drew it down upon the switch, which was upon somewhat of a down grade, and that coming near the end of the switch they heard another train coming towards them and that he then hastily jumped off the locomotive and went back to apply his brakes and was injured against a post. The opening in the coal at the place of the accident was from 160 to 175 feet long and 16 feet wide, and contained a main track and the switch of that length, the cars on the main track and switch respectively running close to the coal. According to the uncontradicted testimony as to the width and situation of the tracks there was about five feet between the switch and the main track. In this space between the switch and the main track there were, according to the defendant and the plaintiff's witnesses, about twelve props which were situated close to the switch, so that there was three or four inches between them and the cars standing on the switch, leaving a clear space of two and a half feet or more between the main track and the line of the posts and leaving a space of from 13 to 15 feet or more between the posts. The plaintiff testifies that he was well acquainted with the place

and that he had notified both the mine foreman and the superintendent, about two weeks before the accident, that he considered the posts dangerous, and he testified that they promised to remove them and that he, therefore, kept on working, relying upon that promise. He testified that in some way—he don't know how—he was squeezed against one of these posts when in the act of attempting to brake one of the cars. The injury he received was a fracture of the pelvic bone. He was off work about a month and then went back to the same company and worked for them about a year and a half and left their employ and worked for another company for several months, and then brought this suit. There was no question that the pelvic bone was healed up and he had no deformity in that respect but it was testified, and not denied, that at the fracture the bony substance was thrown out and some of the muscle attached to the bone at that place was ossified so that he was unable to raise his leg as high as before, and suffered some pain and inconvenience in that respect. There was no evidence of any substantial loss of earning power, plaintiff claiming that he lost one-third of his wages in the year and a half he worked for the company, but the pay roll indicated that he made as much as he did before.

It appeared from the evidence that the entry in question, including the track and switch, was driven before 1911; that in December, 1911, the posts referred to were put in position, and that they remained there ever since, at least up to the time of the trial. The plaintiff did not furnish any evidence as to how the posts came to be there, but the defendant put on the stand the mine foreman who was in their employ in December, 1911, although not employed by them at the time of the trial, and it was testified to by him and others connected with the mine that he had ordered these posts to be put in that position to support the roof of the mine, deeming the space of sixteen feet without support to be unsafe, and that he put the posts close to the switch so as to leave a

clear space to walk between the cars and the main track. No evidence was given to the contrary.

The motion for judgment n. o. v. is founded upon the proposition that, if these posts were ordered to be set up as they were by the mine foreman for the purpose of holding up the roof, the mine owner was not responsible for any injury that might be caused by their being there; and, further, while the evidence to this effect was given by the defendant, the jury could not be allowed to disregard or disbelieve it, in the absence of any evidence to the contrary; and the motion for a new trial is founded upon the allegation that the verdict is excessive.

The question presented by the facts above stated as to the liability of the mine owner for injuries caused by the position of the posts is one which does not appear to have arisen in any of the cases under either the bituminous or anthracite mining acts. The general rule deducible from those cases, as we understand it, is that, where the act imposes upon the mine owner a specific duty as to the arrangement and management of the mines, the mine owner cannot protect himself from liability by showing that the structure in question was put up by direction of the mine foreman, at least wherever the fact of its existence became known to the owner, but that it would be his duty to remove it; and that, on the other hand, where the act does not call for any particular arrangement or structure, the arrangement or structures ordered by the mine foreman for the purpose of supporting the roof are obligatory on the owner and that he is therefore not responsible for injuries caused thereby. This part of the case, therefore, would seem to turn upon the question whether there is anything in the act directing the owner to maintain the place in question in this way. The Bituminous Mining Act of May 15, 1893, P. L. 52, which seems to apply in this case by reason of the fact that the entry was driven before the Act of June 15, 1911, P. L. 954, was passed, provides, in p. 78, Article XX, Rule 3, that the mine owner shall see that the entries where

braking is necessary "shall have a clear level width of not less than two and a half feet between the side of the car and the rib, to allow the driver to pass his trip safely and keep clear of the cars there." Whether this requires a space of two and a half feet to be left between the cars and a row of posts such as this was, as well as another way of two and a half feet on the other side of the posts, between them and the main track, seems to us very doubtful. We have with some hesitation arrived at the conclusion that under the peculiar circumstances of the case the question was one for the jury. The motion for judgment non obstante veredicto is therefore refused.

As to the motion for a new trial, we are clearly of opinion that the verdict is excessive. The plaintiff really showed no loss of earnings except one month. He showed no real prospect of any future loss of earnings; he showed no expenses paid out for medical attendance or otherwise, so that the damages he is entitled to, if entitled to recover, is this one month's wages and compensation for pain and suffering and inconvenience. We are fully convinced that $3,750.00 is entirely too much, under the circumstances, and that a new trial should be granted for that reason unless the plaintiff will remit a considerable part of the verdict.

If the plaintiff will, within twenty days after notice hereof, remit, $1,250.00 of the verdict a new trial will be refused; otherwise a new trial will be granted.

Verdict for plaintiff for $3,750 which the court reduced to $2,500 and entered judgment on the reduced verdict. Defendant appealed.

*Errors assigned,* among others, were in refusing to direct a verdict for defendant and in refusing to enter judgment for defendant n. o. v.

*Robert Woods Sutton,* with him *John McCartney Kennedy, Watson & Freeman* and *Francis A. Wolf,* for appellant.

*Walter P. Smart*, with him *L. K. & S. G. Porter* and *Louis V. Barach*, for appellee, relied on Dobra v. Coal Co., 250 Pa. 313, 318, 319, and cases there cited.

PER CURIAM, January 7, 1918:

The law applicable to the facts of this case has been settled in favor of the appellee by recent decisions of this court and does not require consideration here. The evidence was sufficient to warrant the submission of the case to the jury on the question of the plaintiff's and defendant's negligence and, there being no allegation of error in the charge, the judgment is affirmed.